CHARLES O. YOUNG *vs.* BOSTON and NORTHERN STREET RAILWAY COMPANY.

Essex.   November 6, 1912. — January 27, 1913.

Present: RUGG, C. J., HAMMOND, BRALEY, SHELDON, & DE COURCY, JJ.

*Negligence,* Street railway.

It is not necessarily negligent for a passenger in a street railway car, who has signalled to the conductor for the car to be stopped at a regular stopping place which it is approaching, when the conductor has pulled the bell but the speed of the car has not been slackened, to leave his seat at the side of the car and walk to the door, and then to stand inside the doorway grasping one side of it firmly with his hand, although he knows that the car is moving at a high rate of speed and is about to pass over a switch where there is likely to be a lurch.

For a street railway car, which has been running at an excessive rate of speed, to pass with undiminished speed over a switch and in doing so to give a sudden lurch, "like being snapped on the end of a whip," throwing a passenger, who is standing inside the doorway with a firm grasp on one side of it, against

the controller box and completely down on the vestibule floor, and throwing another standing passenger across and upon a seat so that he grasps the window sill to save himself from falling, is evidence of negligence in the operation of the car.

TORT for personal injuries sustained when the plaintiff was a passenger on an electric street car of the defendant on Lynn Street in the town of Peabody on the evening of January 27, 1910. Writ dated March 29, 1910.

In the Superior Court the case was tried before *Fessenden*, J.

The plaintiff testified that he boarded a car of the defendant at Peabody Square about 8.35 o'clock in the evening to go to his home on Lynn Street in Peabody; that he had been travelling over this route morning, noon and night for about three years; that the track on Lynn Street was a single track with a turnout in front of the plaintiff's house; that his house was about midway of this turnout; that at the Peabody end of the turnout was a white post, a stopping post; that this post was about one hundred and twenty feet distant from the switch that a car passes over in entering upon the turnout in travelling from Peabody to Lynn; that on the night in question the plaintiff was seated eight or ten feet from the rear door, the seats running lengthwise of the car; that as the car approached that white post and before it got to it, he motioned to the conductor; that the conductor pulled the bell, but that the car did not slacken its speed; that he got up and stepped to the rear door to notify the conductor that he wanted to get off; that he did not step through the doorway but "grabbed hold of the side of the door with his hand;" that at this time the car was going at a high rate of speed and that when it struck the switch it "wrenched his grasp from the door and threw him out into the vestibule against the controller box and completely down onto the vestibule floor," causing the injury complained of; that when the car struck the switch "it seemed like being snapped on the end of a whip;" that "there was quite a racket and it seemed as if the car was going over;" that the car did not come to a stop until it travelled a full length of the car below the next white post at the Lynn end of the turnout; that the plaintiff had been in the habit of signalling to get out at the white post at the Peabody end of the turnout because the cars always on a signal for that post ran up to the switch and that that made it a little nearer

and a little handier for him than to ride to the white post at the Lynn end of the turnout.

The plaintiff further testified that in passing to the rear door he did not pass by any passengers and there was no one in the vestibule other than the conductor; that he stood at the door long enough to take a good grip of the door jamb; that he did not take any particular time in going to the door, did not go slow or run; that the car was going at a high rate of speed, but that he could not describe it exactly; that, after he had stood at the door long enough to get a good grip, something happened, the car went from right to left and that as the car went from right to left he went out into the vestibule, head first; that he was taken right off his feet; that he had received an injury to his leg about sixteen months before this accident and had not wholly recovered from it.

One Hardy testified in behalf of the plaintiff that he was a passenger on the same car with the plaintiff, sitting on the opposite side of the car, a little more than half way down from the rear door; that he got up from his seat to follow the plaintiff out, and that, when the car passed over the switch at the Peabody end of the turnout, it gave a quick and sudden lurch, throwing him across the seat so that he grabbed the window sill to save himself from falling; that at the time of the lurch the plaintiff was standing at the door, inside of the car; that as the car approached the Peabody end of the turnout it was going twice or more than twice as fast as it generally did over that turnout; that he had been accustomed to ride frequently on these cars; that on the night in question this car did not come to a stop until it had reached the white post at the Lynn end of the turnout; that the lurch not only threw him across the seat but upon the seat.

A witness, who occupied the house next to that of the plaintiff, testified that at the time of the accident he was awakened from sleep by the unusually loud noise made by the car in going over the turnout.

At the close of the evidence the judge at the request of the defendant ordered a verdict for the defendant, and at the request of the parties reported the case for determination by this court, with the stipulation that, if the ordering of the verdict was right, judgment should be entered for the defendant; and that, if the

case should have been submitted to the jury, judgment should be entered for the plaintiff in the sum of $325 with costs.

The case was submitted on briefs.

*W. H. Niles & E. S. Underwood,* for the plaintiff.

*M. L. Sullivan & J. J. Ronan,* for the defendant.

SHELDON, J. The question of the plaintiff's due care was for the jury. It could be found that when he left his seat he had signalled for the car to be stopped at a regular stopping place which it was approaching, and that he had a right to expect, although that had not yet been done, that the speed of the car would be slackened and the car stopped to allow him to alight. In this respect the case resembles in principle *Farnon* v. *Boston & Albany Railroad,* 180 Mass. 212. It is not necessarily negligent for a passenger, even upon a steam railroad when the train is coming to a station at which he is to alight, to leave his seat and walk to the door of the car, that he may be ready to go out with the promptness that may be needful. *Worthen* v. *Grand Trunk Railway,* 125 Mass. 99. *Barden* v. *Boston, Clinton & Fitchburg Railroad,* 121 Mass. 426. *A fortiori,* this is true of a passenger in a street railway car. *Larson* v. *Boston Elevated Railway,* 212 Mass. 262. Nor was it negligent as matter of law for him to stand at the car door with the firm hold that he testified that he had thereon, in the expectation that the speed would be lessened so as to make the stop which he well might anticipate would be made. No doubt from his knowledge that the car was moving at a very high rate of speed, that its swaying was already unusual, and that it was about to pass over a switch, where there was likely to be a lurch, it reasonably might have been expected that the jury would say that he was negligent; but the issue was still for them and not for the court.

There was evidence also of the defendant's negligence, even apart from the excessive speed with which it could be found that the car was sent over the switch. It is of course true that this negligence cannot be found from the bare fact that there was a lurch of the car and that injury resulted, even though witnesses might testify that the lurch was an unusual one. But here there was something more. The jury could find that the evidence brought the case within the rule stated in *Work* v. *Boston Elevated Railway,* 207 Mass. 447. In that case, Mr. Justice Loring has

collected the decisions made since *McGann* v. *Boston Elevated Railway,* 199 Mass. 446, in which the earlier cases are cited. Later decisions are *Craig* v. *Boston Elevated Railway,* 207 Mass. 548; *McCarthy* v. *Boston Elevated Railway,* 207 Mass. 551; *McCarthy* v. *Boston Elevated Railway,* 208 Mass. 512; and *Webber* v. *Old Colony Street Railway,* 210 Mass. 432.

The case should have been submitted to the jury. The verdict for the defendant must be set aside; and under the terms of the report judgment must be entered for the plaintiff for $325 and costs.

*So ordered.*